# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK

---

PAUL HAMMOND and Another, Respondents, *v.* YONA VARAH REALTY CORPORATION, Appellant.

First Department, December 2, 1927.

Brokers — mortgage loan brokers — action for commissions — defendant contended that plaintiffs were employed to secure loan for $1,700,000 and that loan actually secured for $1,600,000 was not secured through efforts of plaintiffs — error to reject evidence of conversation between president of defendant and manager of corporation making loan, tending to show that loan secured was negotiated before plaintiffs were hired.

The plaintiffs seek to recover commissions for procuring a mortgage loan of $1,600,000 on real property of the defendant. The evidence tends to show and defendant contends that the loan for $1,600,000 was assured defendant prior to the time that defendant engaged plaintiffs and that plaintiffs were engaged to procure a loan of $1,700,000 at a lower rate of interest, which loan was never made. It was error, therefore, for the court to reject evidence of conversations between the president of the defendant and the manager of the corporation making the loan, which tended to prove that the corporation which finally made the loan had agreed to make a loan for $1,600,000 before plaintiffs were employed. This evidence was admissible, notwithstanding the conversations did not take place in the presence of the plaintiffs, for its purpose and effect was to establish that the plaintiffs were not the procuring cause of the loan.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 22d day of December, 1926.

*Morris J. Bricker* of counsel [*Arnstein & Levy,* attorneys], for the appellant.

*Lewis M. Isaacs* of counsel [*M. S. & I. S. Isaacs,* attorneys], for the respondents.

McAvoy, J. Plaintiffs had a judgment here for over $13,000 in an action for brokerage commissions which were said to have been earned by the plaintiffs for obtaining a first mortgage loan of $1,600,000 on certain real property on behalf of the defendant.

The issue is very narrow and is encompassed in the claim that defendant employed the plaintiffs to apply for a mortgage loan of $1,700,000 in February, 1924, upon premises owned by the defendant for which a commission of three-fourths of one per cent of the amount of the loan was to be paid to the plaintiffs if they secured the loan.

The plaintiffs assert that they thereafter procured from the American Bond and Mortgage Company a loan at the sum of $1,600,000 and that defendant agreed to accept this sum.

The defendant admits that the American Bond and Mortgage Company did loan it $1,600,000 on the property mentioned, but asserts that prior to the employment of the brokers they had been assured, in effect, by the lender that this sum would be loaned to them, and their hiring of the plaintiffs was for the express purpose of getting the additional sum amounting to $1,700,000. They thus raised the issue whether or not the plaintiffs were the procuring cause of funding the loan at the reduced sum of money.

The defendant contends that from the first part of January, 1924, and prior to plaintiffs' employment on February twenty-ninth of that year, the defendant through one Bonner had been negotiating with Mr. Memberson of the American Bond and Mortgage Company, manager of the loan department of that concern, for a mortgage loan, and it was around the 1st of January, 1924, that Memberson agreed to recommend a loan of $1,600,000 at six and one-half per cent. It is asserted by defendant that on January 15, 1924, the loan committee of the American Bond and Mortgage Company offered the defendant a loan of that sum at such interest. This offer was repeated in February, but defendant was still insistent on the larger sum.

The plaintiffs' representative, a Mr. Warner, came to the defendant about February 25, 1924. This was his first appearance at its place of business. Defendant then had a twenty-one-foot plot on Amsterdam avenue near Seventy-third street. It had not acquired the corner plot, but was endeavoring to secure it for the purpose of putting up a large apartment. It made a contract to purchase this property adjoining its small plot on February twenty-seventh. On February 29, 1924, defendant gave plaintiffs exclusive authorization for ten days to procure a loan of $1,700,000 at six per cent, a principal sum and an interest rate which up to that time defendant had not been able to obtain. Plaintiffs were

given this authorization, according to defendant's proof, because they assured defendant that they could obtain this loan and that the difference in rate between six and one-half per cent and six per cent which plaintiffs were to obtain on the mortgage loan covering a period of between ten and fifteen years, would more than reimburse defendant for the large commissions which were to be paid to plaintiffs. This sum at that rate was never secured. The employment time of ten days ran out. Long after this, in May or June, 1924, defendant asserts it took up the offer that had been made to it in January and contented itself with a loan of $1,600,000 at six and one-half per cent. This loan was closed in October.

There was evidence from which the jury could find that Warner, the plaintiffs' representative, took Bonner, the defendant's president, to Memberson, the manager of the mortgage company, and introduced him and negotiated a loan at the sum at which defendant afterwards closed it. But we find that this evidence is very unpersuasive in view of the testimony of Memberson, Bonner, Jarcho and Siegel, all of whom gave proof that these negotiations were pending many months before plaintiffs' representative entered into the transaction, and that at any time prior thereto such a loan could have been negotiated without the intervention of plaintiffs. Plaintiffs' own evidence of authorization indicates what they were employed to do, and the time limit on their authorization also indicates that when this was concluded their employment ended. Whatever the fact, however, the learned trial court was in error as a matter of law in refusing to permit the witnesses Sugarman and Siegel on behalf of defendant to testify to conversations that were had between Bonner, defendants' president, and Memberson, manager of the mortgage company, although in the absence of plaintiffs and prior to plaintiffs' employment, which would have shown conversations in connection with this mortgage loan transaction which were had between Bonner and Memberson in the months of. January and February, 1924. The learned court excluded this, it seems, upon the theory that it was hearsay because such conversations were not had in the presence of plaintiffs. We hold this testimony was both competent and relevant upon the issue of who was the procuring cause, in support of defendant's contention that the plaintiffs were not such procuring cause of the loan, but that the loan which was made was offered to them long before the plaintiffs' employment, and, therefore, could not have been procured by the plaintiffs.

It seems to us to be perfectly relevant to receive such proof so that the owner or borrower may show his efforts, negotiations

and conversations with a purchaser or with a lender, in the absence of plaintiffs, to demonstrate that he, as such owner or borrower, and not the plaintiffs, procured the loan or sale. We think this error excluding vital evidence requires a reversal of the judgment.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., FINCH, MARTIN and PROSKAUER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.